UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

_____

CIVIL ACTION APPEAL NO. 13-6665
SECTION "E" – MAGISTRATE 5
_____

In re Jerry Michael Hollander, Jr. Et. Al.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
_____

ORIGINAL BRIEF ON BEHALF OF
ROBERT AND RHONDA SIGILLITO

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

EDWARD H. ARNOLD, III (18767)
BENJAMIN W. JANKE (31796)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR
ROBERT AND RHONDA SIGILLITO**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iv

CERTIFICATE OF INTERESTED PARTIES .............................................................. vi

STATEMENT OF JURISDICTION.............................................................................. vii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..................................1

STANDARD OF REVIEW ...............................................................................................2

STATEMENT OF THE CASE AND PROCEDURAL HISTORY ................................4

      A.     The Bankruptcy Court's First Judgment..............................................5

      B.     The District Court's First Judgment on Appeal
            (The District Court's First Judgment).....................................................7

      C.     The Bankruptcy Court's Judgment on Remand
            (The Bankruptcy Court's Second Judgment)...........................................7

      D.     The District Court's Second Judgment on Appeal
            (The District Court's Second Judgment) ..................................................8

      E.     The Fifth Circuit Court of Appeals' Reversal.........................................8

      F.     The Bankruptcy Court's Judgment on Remand
            (The Bankruptcy Court's Third Judgment)...........................................9

      G.     The District Court's Third Judgment on Appeal
            (The District Court's Third Judgment) ..................................................9

      H.     The Bankruptcy Court's Judgment on Remand
            (The Bankruptcy Court's Fourth Judgment).........................................10

STATEMENT OF FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW .......11

SUMMARY OF THE ARGUMENT ...........................................................................13

I.     The Bankruptcy Court Created Another
       New Standard of Fraud that Does Not Exist, and
       Otherwise Failed to Find Fraud Even Under its Own New Standard.................................13

II.     The Sigillitos are Entitled to All Damages Allowable
        Under Louisiana Civil Code article 1958, Including Their Attorneys' Fees. ...................14

ARGUMENT .............................................................................................................................15

I.      The Bankruptcy Court Erred in Creating a
        Heightened Standard of Fraud that is Contrary to Louisiana Law. . ................................15

        A.      Standard of Review .................................................................................................15

        B.      The Bankruptcy Court's Interpretation of Fraud under
                Louisiana Law is Incorrect, But the Bankruptcy Court
                Should Have Found Fraud Even Under Its Own Standard. ....................................15

II.     A Finding of Fraud Requires that this Court Award the Sigillitos
        All Damages and Attorneys' Fees Under Louisiana Civil Code article 1958. .................20

        A.      Standard of Review .................................................................................................20

        B.      The Sigillitos are Entitled to Damages and
                Attorneys' Fees under Louisiana Civil Code article 1958.....................................20

CONCLUSION.........................................................................................................................22

CERTIFICATE OF SERVICE ................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Ins. Co. v. General Electric Co.*,
    362 So. 2d 186 (La. App. 4 Cir. 1978) ...................................................................17

*Altex Ready-Mixed Concrete Corp. v. The Employers Commercial Union Insurance
    Company et. al.*, 308 So. 2d 889 (La. App. 1 Cir. 1975) .........................................17

*Anderson v. City of Bessemer City*,
    470 U.S. 564 (1985)...................................................................................................2

*B-C & G Investors VI, L.L.C. v. Thibaut HG Corp.*,
    985 So. 2d 837 (La. App. 4 Cir. 2008) ...................................................................18

*Boise Cascade Corp. v. Dean*,
    767 So. 2d 76 (La. App. 3 Cir. 2000) .....................................................................17

*Deville v. Leonards*, 457 So.2d 311, 313 (La. App. 3 Cir. 1984) .................................17

*Gad v. Granberry*,
    958 So. 2d 125 (La. App. 3 Cir. 2007) .............................................................18, 19

*Gardner v. Nabors Offshore Corp.*,
    800 So. 2d 412 (La. App. 3 Cir. 2001) ...................................................................17

*Haywood v. Louisiana Sugar Cane Prods.*, 692 So. 2d 524 (La. App. 3 Cir. 1997).....................18

*In the Matter of Multiponics*,
    622 F.2d 708 (5th Cir. 1983) ...................................................................................2

*Josephs v. Austin*,
    420 So. 2d 1191 (La. App. 5 Cir. 1982) ...................................................................8

*Lanthier v. Family Dollar Store*,
    848 So. 2d 605 (La. App. 3 Cir. 2003) ...................................................................17

*Mayfield v. Reed*,
    981 So. 2d 235 (La. App. 2 Cir. 2008) ...................................................................21

*McDonough Marine Service v. Doucet*,
    694 So. 2d 305 (La. App. 1 Cir. 1996) ...................................................................18

*Murphy's Lease & Welding Service, Inc. v. Bayou Concessions Salvage, Inc.*,
    780 So. 2d 1284 (La. App. 3 Cir. 2001) .................................................................17

*Ram Construction Co. v. American States Insurance Co.*,
　　749 F.2d 1049 (5th Cir. 1984) ........................................................3, 20

*Richmond Leasing Co. v. Capital Bank, N.A.*,
　　762 F.2d 1303 (5th Cir. 1985) ............................................2, 3, 4, 15, 20

*United States v. U.S. Gypsum Co.*,
　　333 U.S. 364 (1948) ...............................................................................2

*Zenith Radio Corp. v. Hazeltime Research, Inc.*,
　　395 U.S. 100 (1969) ...............................................................................2

**STATUTES**

11 U.S.C. § 523(a)(2)(A) ...............................................................5, 6, 7

28 U.S.C. § 158(a) .................................................................... viii, 2

Federal Rule of Bankruptcy Procedure 8013 ..................................2

Federal Rule of Civil Procedure 52(a) ...........................................2

La. Civ. Code Ann. art. 1953 ............................................... passim

La. Civ. Code Ann. art. 1958. .............................................. passim

**OTHER AUTHORITIES**

DEMOGUE, TRAITÉ DES OBLIGATIONS EN GÉNÉRAL (1923) .........................20

PLANIOL ET RIPERT, TRAITÉ PRATIQUE DE DROIT CIVIL FRANÇAIS (2d ed. Esmein 1952) ..........20

WEILL, DROIT CIVIL – LES OBLIGATIONS (1970) ........................................20

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

1. Dr. Robert Sigillito

2. Rhonda Sigillito

3. Jerry Michael Hollander, Jr.

4. Shelia Story Hollander

5. Baker, Donelson, Bearman, Caldwell & Berkowitz, counsel for Robert and Rhonda Sigillito

6. Edward H. Arnold, III, counsel for Robert and Rhonda Sigillito

7. Benjamin West Janke, counsel for Robert and Rhonda Sigillito

8. Clint L. Pierson, Jr. trial counsel for Robert and Rhonda Sigillito

9. Roy S. Lilley, counsel for Jerry Michael Hollander and Sheila Story Hollander.

10. Richard Greenland, counsel for Jerry Michael Hollander and Sheila Story Hollander.

11. Claude C. Lightfoot, Jr., counsel for Jerry Michael Hollander and Sheila Story Hollander.

12. Ronald J. Hof, Chapter 7 trustee for the estate of Jerry Michael Hollander and Sheila Story Hollander.

/s/ Benjamin W. Janke
BENJAMIN W. JANKE
Counsel for Robert and Rhonda Sigillito

vi

## STATEMENT OF JURISDICTION

This Honorable Court has jurisdiction of this Appeal as an appeal from a final Judgment, Order, or Decree of the United States Bankruptcy Court, Eastern District of Louisiana, pursuant to 28 U.S.C. § 158(a), which provides:

> The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under Section 157 of this title [28 U.S.C. § 157]. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

The Bankruptcy Court for the Eastern District of Louisiana entered a Memorandum Opinion on January 14, 2009 [R. Doc. No. 103], a Judgment on January 14, 2009 [R. Doc. No. 104], an Amended Judgment on March 27, 2009 [R. Doc. No. 114], a Memorandum Opinion on January 12, 2010 [R. Doc. No. 132], and a Judgment on Remand on January 12, 2010 [R. Doc. No. 133], denying the relief requested by the Sigillitos. Following an appeal from the Judgment on Remand [R. Doc. No. 133] to the District Court, and an appeal from the District Court's judgment to the Fifth Circuit Court of Appeals, the Fifth Circuit Court of Appeals reversed and remanded the judgment of the District Court, which remanded the judgment to the Bankruptcy Court. [R. Doc. No. 23, in 10-30696, E.D. La.]. Thereafter, the Bankruptcy Court issued a Judgment and Memorandum Opinion on December 28, 2011 [R. Doc. Nos. 150-151], denying the relief requested by the Sigillitos. The Sigillitos appealed the Bankruptcy Court's judgment [R. Doc. No. 154], and the District Court entered an Order vacating the Bankruptcy Court's judgment on October 2, 2013 [R. Doc. No. 166]. On remand, the Bankruptcy Court entered a new Memorandum Opinion and Judgment on November 7, 2013 [R. Doc. Nos. 169-170] denying the Sigillitos' fraud claim. This Honorable Court has jurisdiction of this Appeal from these Judgments and Decrees.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The core issue of this appeal is that the Bankruptcy Court has created yet another heightened level of fraud that simply does not exist. This time, the Bankruptcy Court refused to find fraud because it opined (for the first time) that fraud requires an "active intent" or "an intent to cause a consequence,"[1] and that the Sigillitos did not establish that the Hollanders had an "intent to cause a consequence." The Bankruptcy Court also found that the Hollanders "did not believe that their omission was harmful nor was it designed to gain an unjust advantage,"[2] notwithstanding that it previously found that their misrepresentation was specifically "designed to deceive"[3] and "designed to avoid any chill on a potential sale."[4]

Plain and simple, the Bankruptcy Court's findings in its previous Memorandum Opinion—that the Hollanders' failure to disclose defects in their home was "**designed to deceive**" [R. Doc. No. 103, p. 20, lines 5-7] and "**designed to avoid any chill on a potential sale"**—is precisely the "consequence" that the Bankruptcy Court previously found the Hollanders intended to achieve. It was thus manifestly erroneous for the Bankruptcy Court to find on remand that the Hollanders did not have "an intent to cause a consequence" or an intent "to gain an unjust advantage,"[5] when that is precisely what it held nearly five years ago. A misrepresentation that is "**designed to deceive**" is fraud.

If the Hollanders are liable for fraud under Louisiana Civil Code article 1953, the Sigillitos are entitled to damages and attorneys' fees under Civil Code article 1958. The

---

[1]   [R. Doc. No. 169, p. 5].

[2]   [R. Doc. No. 169, pp. 5, 7].

[3]   [R. Doc. No. 103, p. 20].

[4]   *Id.*

[5]   [R. Doc. No. 169, pp. 5, 7]

Bankruptcy Court only awarded the Sigillitos their actual damages in redhibition that they had incurred up to that point. The Sigillitos continued to incur additional damages following the Bankruptcy Court's amended judgment, and they have expended significant attorneys' fees. Under Civil Code article 1958, the Sigillitos are entitled to all of their direct and consequential damages, in addition to their attorneys' fees.

## STANDARD OF REVIEW

This is an appeal from the Bankruptcy Court's Memorandum Opinion entered January 14, 2009 [R. Doc. No. 103], Judgment entered January 14, 2009 [R. Doc. No. 104], Amended Judgment entered March 27, 2009 [R. Doc. No. 114], Memorandum Opinion entered January 12, 2010 [R. Doc. No. 132], Judgment on Remand entered January 12, 2010 [R. Doc. No. 133], Judgment on Remand and Memorandum Opinion following an appeal to the District Court and the Fifth Circuit Court of Appeals entered December 28, 2011 [R. Doc. Nos. 150-151], and Judgment on Remand and Memorandum Opinion entered November 7, 2013 [R. Doc. Nos. 169-170], denying the relief requested by the Sigillitos.

The District Court has jurisdiction to hear appeals from final judgments, orders, and decrees from the Bankruptcy Court. 28 U.S.C. § 158(a). Federal Rule of Bankruptcy Procedure 8013, following Federal Rule of Civil Procedure 52(a), mandates the application of the "clearly erroneous" standard to the review of findings of fact of the Bankruptcy Court, which the appellant has the burden of proving. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985); *In the Matter of Multiponics*, 622 F.2d 708 (5th Cir. 1983). Reversal of a finding of fact is proper when, although there may be evidence to support it, the reviewing court is convinced that a mistake was committed. *Multiponics, supra; Anderson v. City of Bessemer City,* 470 U.S. 564 (1985); *United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948).

2

The reviewing court may not consider evidence *de novo* in overturning a finding of fact. *Zenith Radio Corp. v. Hazeltime Research, Inc.*, 395 U.S. 100 (1969).

The standard of review for any legal issues presented in this appeal is the plenary standard of *de novo* review. *Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049, 1053 (5th Cir. 1984); *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1307 (5th Cir. 1985).

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

In March 2002, Jerry Michael Hollander, Jr. and Sheila Story Hollander (collectively "the Hollanders") sold their Mandeville, Louisiana house to the Sigillitos for $540,000.00.[6] In March 2003, the Sigillitos filed a lawsuit in Louisiana state court against the Hollanders, seeking damages, attorneys' fees, and either reduction in the purchase price, payment for repair expenses, or rescission of the sale based upon redhibitory defects in the property that were not apparent to the Sigillitos at the time of the sale.[7] The Sigillitos' petition alleged that within two weeks of moving into the house, they learned that the "wood floors were starting to cup" and they noticed mold and mildew throughout the house.[8] The Sigillitos' petition further alleged that the Hollanders "concealed major problems with the floors, foundation, and ventilation" and that the Hollanders failed to disclose a pending lawsuit that they had filed claiming defective design of the house, improper ventilation, and improper and defective installation of the wood floors.[9] The Sigillitos' claimed that they purchased the home as a result of the Hollanders' "lies and deception" on the property disclosure statement and that they would not have purchased the property had they known of the extent of defects.[10]

This appeal originates from a judgment rendered by the Bankruptcy Court for the Eastern District of Louisiana that was appealed to the U.S. District Court for the Eastern District of Louisiana. The Bankruptcy Court issued a second judgment on remand, which was itself appealed to the District Court. When the District Court affirmed the Bankruptcy Court's second

---

[6]   *See* District Court's Order and Reasons [R. Doc. No. 145].

[7]   *Id.*

[8]   *Id.*

[9]   *Id.* at 90.

[10]   *Id.*

judgment on remand, the Sigillitos appealed the District Court's judgment on appeal to the Fifth Circuit Court of Appeals. The Fifth Circuit reversed the District Court, remanded the judgment back to the District Court, which remand the judgment to the Bankruptcy Court. The Bankruptcy Court entered a third judgment on remand, which the Sigillitos appealed to the District Court. The District Court vacated the Bankruptcy Court's third judgment based on the Bankruptcy Court's *repeated* misinterpretation of fraud under Louisiana law. On remand, the Bankruptcy Court declined to find fraud again, this time adding a new "active intent" element that it had never discussed before. The Bankruptcy Court also refused to apply its previous factual findings to its own new standard. All totaled, there are three (3) judgments on appeal that were rendered by the District Court and three (3) judgments from the Bankruptcy Court that were appealed to the District Court. This is an appeal from the Bankruptcy Court's fourth judgment.

The following is a brief description of the procedural history of this case.

### A.      The Bankruptcy Court's First Judgment

In September, 2004, the Hollanders filed a Chapter 7 voluntary petition for bankruptcy. The Sigillitos commenced an adversary proceeding, seeking to have their claim for damages pending in Louisiana state court excepted from discharge under 11 U.S.C. § 523(a)(2)(A) on the ground that the Hollanders obtained $540,000.00 from the Sigillitos under false pretenses, false representations, and/or actual fraud.[11] The Sigillitos' complaint to determine dischargeability alleged that the Hollanders had made several misstatements and misrepresentations regarding the

---

[11]    *See* District Court's Order and Reasons [R. Doc. No. 145].

property's condition and that the Hollanders failed to disclose numerous defects or vices.[12] The complaint further incorporated the allegations made in the state court petitions.[13]

On January 14, 2009, following trial and post-trial briefing, the Bankruptcy Court issued a judgment that the Sigillitos have a non-dischargeable claim against the Hollanders for $26,561.43.[14] In a memorandum opinion issued on the same date, the Bankruptcy Court found that the house had a non-apparent defect due to improper ventilation of crawlspace, which caused the wood floors to cup and mold to spread.[15] The Bankruptcy Court, accordingly, found the Hollanders liable for redhibition and ordered them to pay the cost to remedy the defect.[16] The Bankruptcy Court, however, denied an award of attorneys' fees and other damages.[17] The Bankruptcy Court further concluded that the Sigillitos' claim was non-dischargeable in bankruptcy pursuant to § 523(a)(2)(A) because the claim was incurred as a result of false pretenses.[18] Specifically, the Bankruptcy Court found that although the Hollanders stated in a disclosure form that they had replaced the floors, they failed to disclose the full extent and nature of their prior flooring problems by omitting that they had replaced the floor joists, subfloor, ventilation fans, and openings in the crawlspace.[19] The Bankruptcy Court found that such failure

---

[12]   *Id.*

[13]   *Id.* at 91.

[14]   *See* Bankruptcy Court's Original Judgment [R. Doc. No. 104].

[15]   *See* Bankruptcy Court's Original Memorandum Opinion [R. Doc. No. 103].

[16]   *Id.*

[17]   *Id.*

[18]   *Id.*

[19]   *Id.*

to disclose was "misleading," "designed to deceive," and "designed to avoid any chill on a potential sale."[20]

Following a motion for reconsideration, the Bankruptcy Court issued an Amended Judgment awarding the Sigillitos an additional $1,863.00 in damages.[21] Thereafter, the Sigillitos appealed the Bankruptcy Court's first judgment.

### B.     The District Court's First Judgment on Appeal<br>(The District Court's First Judgment)

Following the Sigillitos' appeal of the Bankruptcy Court's first judgment, the District Court affirmed in part and vacated and remanded in part.[22] The District Court affirmed the Bankruptcy Court's decision with respect to the amount of the repair costs, whether attorneys' fees could be collected due to bad faith redhibition, and the manner in which the Bankruptcy Court conducted the trial.[23] The Court remanded the case to the Bankruptcy Court to determine whether the Hollanders were liable to the Sigillitos for fraud pursuant to Louisiana state law.[24]

### C.     The Bankruptcy Court's Judgment on Remand<br>(The Bankruptcy Court's Second Judgment)

On January 12, 2010, the Bankruptcy Court denied the Sigillitos fraud claim.[25] The Sigillitos appealed the Bankruptcy Court's Judgment on Remand to the District Court.

---

[20]  *Id.*

[21]  *See* Bankruptcy Court's Amended Judgment [R. Doc. No. 114].

[22]  *See* District Court's Order and Reasons from the Sigillitos' First Appeal [R. Doc. No. 129].

[23]  *Id.*

[24]  *Id.*

[25]  *See* Bankruptcy Court's Judgment on Remand [R. Doc. No. 133] and Bankruptcy Court's Memorandum Opinion to the Judgment on Remand [R. Doc. No. 132].

D.     **The District Court's Second Judgment on Appeal**
       **(The District Court's Second Judgment)**

The District Court affirmed the Bankruptcy Court's judgment on remand, affirming that the Sigillitos did not prove their fraud claim by "clear and convincing evidence."[26] The Sigillitos appealed the District Court's Judgment to the Fifth Circuit for, among other reasons, the District Court and Bankruptcy Court's misapplication of the "clear and convincing" evidence standard to the Sigillitos' fraud claim.

E.     **The Fifth Circuit Court of Appeals' Reversal**

The Fifth Circuit Court of Appeals reversed and remanded the judgment of the Bankruptcy Court, holding that both "[t]he case on which both the District and the Bankruptcy Courts relied for the proposition that fraud requires clear and convincing evidence, *Josephs v. Austin*, 420 So. 2d 1191 (La. App. 5 Cir. 1982), has been superceded, and those courts erred in relying on it."[27] The Fifth Circuit further held that the Bankruptcy Court's finding that the Hollanders' intent of preventing the chilling of future sales, rather than to obtain an unjust advantage, "was necessarily based at least in part on the burden of proof used by the Bankruptcy Court—that is, the Bankruptcy Court's finding was in effect a finding that the Sigillitos had failed to show by clear and convincing evidence that the Hollanders' intent was fraudulent. Applying the correct burden of proof, the bankruptcy court may come to the opposite conclusion."[28] Accordingly, the Fifth Circuit reversed and remanded the Bankruptcy Court's judgment.

---

[26]   *See* District Court's Order and Reasons and District Court's Judgment [R. Doc. Nos. 145 and 146].

[27]   *See* Fifth Circuit Court of Appeals' Judgment and Memorandum [R. Doc. No. 23], No. 10-00392, E.D. La.

[28]   *Id.*

F.   **The Bankruptcy Court's Judgment on Remand**
     **(The Bankruptcy Court's Third Judgment)**

After the District Court remanded the judgment from the Fifth Circuit to the Bankruptcy Court, the Bankruptcy Court issued a Memorandum Opinion[29] and Judgment,[30] holding that the Sigillitos failed to establish, by a preponderance of the evidence, their claim for fraud,[31] because "Louisiana courts have found no unjust advantage when parties have no close personal relationship or are on equal footing such that there is no great disparity between educational backgrounds, business experience, or mental capacity." However, the Bankruptcy Court failed to consider the body of Louisiana jurisprudence in which the courts found that it is an unjust advantage to obtain a sale by a misrepresentation. The Sigillitos appealed the Bankruptcy Court's Judgment on Remand to the District Court.[32]

G.   **The District Court's Third Judgment on Appeal**
     **(The District Court's Third Judgment)**

On appeal, the District Court agreed with the Sigillitos and vacated the Bankruptcy Court's December 28, 2011 Judgment,[33] holding that "[t]he Bankruptcy Court's finding that proof of unequal positions is required to find an 'unjust advantage' is incorrect as a matter of law."[34] The District Court remanded the case to the Bankruptcy Court to determine whether the

---

[29]   [R. Doc. No. 150].

[30]   [R. Doc. No. 151].

[31]   [R. Doc. No. 151].

[32]   [R. Doc. No. 154].

[33]   [R. Doc. No. 151]

[34]   [R. Doc. No. 166], at p. 6.

9

Hollanders' actions constituted fraud under Louisiana law and, if so, what damages are recoverable as a result.[35]

> **H.      The Bankruptcy Court's Judgment on Remand
> (The Bankruptcy Court's Fourth Judgment)**

On remand, the Bankruptcy Court once again refused to find fraud, this time opining (for the first time) that fraud requires an "active intent" or "an intent to cause a consequence,"[36] and that the Sigillitos did not establish that the Hollanders had an "intent to cause a consequence." The Bankruptcy Court also found that the Hollanders "did not believe that their omission was harmful nor was it designed to gain an unjust advantage,"[37] notwithstanding that it previously found that their misrepresentation was specifically "designed to deceive"[38] and "designed to avoid any chill on a potential sale."[39]

Again, the Bankruptcy Court did not properly interpret fraud under Louisiana law. The Bankruptcy Court cannot escape its initial findings of fact and then create new, inconsistent, and incorrect interpretations of fraud every time this case is remanded to it. This Court should exercise its authority to reverse the Bankruptcy Court's judgment and render judgment in favor of the Sigillitos, because the Bankruptcy Court has already made all of the factual determinations necessary for this Court to reach a simple conclusion: The Hollanders are liable to the Sigillitos for their fraud under Louisiana law.

---

[35]    *Id.* at 7.

[36]    [R. Doc. No. 169, p. 5].

[37]    [R. Doc. No. 169, pp. 5, 7].

[38]    [R. Doc. No. 103, p. 20].

[39]    *Id.*

## STATEMENT OF FACTS
## RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW

On March 29, 2002, Appellees, Jerry and Sheila Hollander (the "Hollanders"), sold a home and property (the "Property") they owned at 2665 Claiborne Street, Mandeville, Louisiana, to Robert and Rhonda Sigillito (the "Sigillitos"), for $540,000.00.[40] Upon occupying the Property, the Sigillitos discovered numerous substantial vices and defects with the house, including but not limited to: insufficient air conditioning and heating systems; inadequate and/or improper ventilation and insulation; defective and faulty design; improper or defective installation of the floors and floor supports; and persistent and recurring mold and moisture problems.[41]

Upon investigation, the Sigillitos learned that the Hollanders had made substantial and significant misstatements and misrepresentation with respect to the condition of the property at the time of the sale and had omitted or failed to disclose numerous known defects or vices.[42] After the sale, the Sigillitos also learned that the Hollanders were plaintiffs in an active legal proceeding pending in St. Tammany Parish against multiple defendants, alleging faulty design in the construction of the house, improper ventilation under the raised floor, and improper and defective installation of the wood floors and floor supports.[43] The Hollanders' lawsuit against their builder, architect, and insulation contractor was filed ten months prior to the sale, and the

---

[40]   *See* District Court's Order and Reasons from the Sigillitos' First Appeal [R. Doc. No. 129, p. 1] and Bankruptcy Court's Original Memorandum Opinion [R. Doc. No. 103, p. 1].

[41]   *See* District Court's Order and Reasons from the Sigillitos' First Appeal [R. Doc. No. 129, p. 1-2] and Bankruptcy Court's Original Memorandum Opinion [R. Doc. No. 103, p. 1].

[42]   *Id.*

[43]   *See* Bankruptcy Court's Original Memorandum Opinion [R. Doc. No. 103, p. 5, 7].

existence of the lawsuit and the allegations therein were intentionally withheld from the Sigillitos, the realtors, and the home inspectors.[44]

The core issue at trial in this case was whether or not the Hollanders intentionally withheld information regarding defects and attempted repairs to the residence at issue in order to induce Robert and Rhonda Sigillito to pay them Five Hundred Forty Thousand and NO/100 ($540,000.00) Dollars to acquire a residence that they would not have purchased if full disclosure had been made.[45] The Hollanders' own testimony and that of their witnesses clearly establishes that the numerous misstatements and omissions were intentional and were calculated well in advance. For example, the Hollanders disclosed replaced glued down or nailed down floors when actually all flooring, subflooring, and joists had to be replaced due to excessive moisture and rotting. The trial testimony established that the failed floor system was replaced without any professional design or oversight, despite express advice to the contrary.[46] It is important to note that after the replacement of the flooring system, **the Hollanders never returned to the residence. So, there is no way that the Hollanders could have known whether their efforts to fix the moisture problem were successful.** In other words, the Hollanders turned a blind eye to the real problem, covered it up, and tried to pass the buck to the next guy.

---

[44] *See* Official Trial Transcript of Hearing held on 7/11/08, Tr. 48, Line 7 [R. Doc. No. 88]; Official Trial Transcript of Hearing held on 7/14/08, Tr. 214, Line 7 [R. Doc. No. 89]; Official Trial Transcript of Hearing held on 7/14/08, Tr. 256, Line 21 [R. Doc. No. 89]; Official Trial Transcript of Hearing held on 7/14/08, July 14, 2008; Tr. 173, Lines 11 & 12 [R. Doc. No. 89]; Official Trial Transcript of Hearing held on 8/28/08, Tr. 208, Line 7 [R. Doc. No. 98].

[45] *See* District Court's Order and Reasons from the Sigillitos' First Appeal [R. Doc. No. 129, p. 1] and Bankruptcy Court's Original Memorandum Opinion [R. Doc. No. 103, p. 1].

[46] *See* Official Trial Transcript of Hearing held on 7/15/08 [Tr. 220, Lines 8-12 [R. Doc. No. 90].

## SUMMARY OF THE ARGUMENT

I.      **The Bankruptcy Court Created Another New
        Standard of Fraud that Does Not Exist, and Otherwise
        Failed to Find Fraud Even Under its Own New Standard.**

Once again, the Bankruptcy Court created a new standard of fraud that simply does not exist under Louisiana law. On remand, the Bankruptcy Court's task was simple: determine whether the Hollanders intended to obtain an "unjust advantage" (as interpreted and corrected by the District Court) by failing to disclose defects in the home they sold to the Sigillitos. Instead, the Bankruptcy Court held that a state law fraud claim requires "active intent" or "an intent to cause a consequence,"[47] and that the Sigillitos did not establish that the Hollanders had an "intent to cause a consequence." Curiously, Appellants cannot locate a *single* reported Louisiana case requiring "active intent" to prove fraud. Even so, the Bankruptcy Court's finding that "Sigillitos must also establish *an intent to cause a consequence*" neglects the Bankruptcy Court's findings in its previous Memorandum Opinion (its *first* judgment)—that the Hollanders' failure to disclose defects in their home was "**designed to deceive**" and "**designed to avoid any chill on a potential sale.**"[48] The Bankruptcy Court's factual findings squarely fit the "unjust advantage" requirement for fraud under Louisiana law. It was thus manifestly erroneous for the Bankruptcy Court to find on remand that the Hollanders' could not be liable for fraud because they did not "establish *an intent to cause a consequence*," or because the Hollanders "did not believe that their omission was harmful nor was designed to gain an unjust advantage."[49] A misrepresentation that is "**designed to deceive**" and "**designed to avoid any chill on a potential sale**" is precisely the "consequence" the Hollanders intended, and is fraud.

_____

[47]   [R. Doc. No. 169, p. 5].

[48]   [R. Doc. No. 103, p. 20].

[49]   [R. Doc. No. 169], pp. 5, 7.

**II.     The Sigillitos are Entitled to All Damages Allowable Under
         Louisiana Civil Code article 1958, Including Their Attorneys' Fees.**

If the Hollanders are liable for fraud under Louisiana Civil Code article 1953, the Sigillitos are entitled to damages and attorneys' fees under Civil Code article 1958. The Bankruptcy Court only awarded the Sigillitos their actual damages in redhibition that they had incurred up to that point. The Sigillitos continued to incur additional damages following the Bankruptcy Court's amended judgment, and they have expended significant attorneys' fees. Under Civil Code article 1958, the Sigillitos are entitled to all of their direct and consequential damages, in addition to their attorneys' fees.

14

## ARGUMENT

**I.      The Bankruptcy Court Erred in Creating a**
**       Heightened Standard of Fraud that is Contrary to Louisiana Law.**

**A.      Standard of Review.**

Whether the Bankruptcy Court erred in applying Louisiana's law of fraud is a legal issue, and a question of law gives rise to the plenary standard of *de novo* review. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1307 (5th Cir. 1985).

**B.      The Bankruptcy Court's Interpretation of Fraud under**
**       Louisiana Law is Incorrect, But the Bankruptcy Court**
**       Should Have Found Fraud Even Under Its Own Standard.**

Fraud is plainly defined under the Civil Code as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. . . ."[50] Here, the Sigillitos contend that the Hollanders intended to create an unjust advantage in making a clear representation that aided them in the sale of their home to the disadvantage of the Sigillitos.

In its most recent decision on remand, the Bankruptcy Court held that a state law fraud claim requires "active intent" or "an intent to cause a consequence,"[51] and that the Sigillitos did not establish that the Hollanders had an "intent to cause a consequence." The Bankruptcy Court's incorrectly restrictive view of Louisiana law is belied by the plain text of article 1953, common sense, and a firm body of Louisiana jurisprudence.

First, Appellants cannot locate a single Louisiana case requiring "active intent" to prove fraud under Louisiana law (other than the Bankruptcy Court's decision). As for the Bankruptcy

---

[50]    LA. CIV. CODE ANN. art. 1953.

[51]    [R. Doc. No. 169, p. 5].

Court's determination that "the Sigillitos must also establish *an intent to cause a consequence*,"[52] the Sigillitos do not disagree. In fact, that is precisely what the Sigillitos proved, and the Bankruptcy Court found, as illustrated in the Bankruptcy Court's very first memorandum opinion.

The fact that the Hollanders made a misrepresentation and suppression of the truth is undisputed. The Bankruptcy Court found that the "Hollanders failed to disclose the repairs or alterations to the home that they had undertaken;"[53] that the Hollanders' omission was "material and based on a writing;"[54] and that this omission was founded on the Hollanders' "belief that the disclosure might irrationally scare potential buyers away."[55] These findings lead the Bankruptcy Court to hold that the Hollanders' failure to disclose defects in their home was "**designed to deceive**" and "**designed to avoid any chill on a potential sale.**"[56] What other "consequence"

---

[52]   [R. Doc. No. 169, p. 5].

[53]   *See* Bankruptcy Court's Memorandum Opinion on Remand [R. Doc. No. 150, p. 5].

[54]   *Id.*

[55]   *Id.* at p. 6.

[56]   *See* Bankruptcy Court's Original Memorandum Opinion [R. Doc. No. 103, p. 20]. The Bankruptcy Court stated:

> An "alteration" is defined as "the act or process of altering," which is "to make different: MODIFY." The repairs to the Claiborne House included an "alteration" of the home as it is commonly understood. Removal of a defective flooring system to the point of replacing floor joists and subfloor as well as the addition of ventilation fans and openings in the crawlspace, all at significant cost, certainly constitute a change in the original home's design. However, was the Hollanders' failure to disclose designed to deceive?

> The Court concludes yes. The Hollanders failure to disclose the extent of the alterations to their home was designed to avoid any chill on a potential sale. The Court believes that the Hollanders were concerned that any disclosure of the extent of the prior flooring problem would scare off potential buyers. This conclusion is supported in part by Mrs. Hollander's question to Quick in January 2002, when Mrs. Hollander asked whether after completing the repairs any defects would remain which should be disclosed. Quick advised that if professional recommendations were followed, there would be no more defects. While the Hollanders justifiably believed that no problem existed, the failure to disclose was justifiably relied upon by the Sigillitos who had no reason to suspect the disclosure was incomplete. A disclosure might have resulted in additional and particularized investigation and perhaps remedial repairs that would have avoided further damage.

16

was the Bankruptcy Court looking for? The Hollanders did not withhold their disclosures for the sport of it; they engaged in calculated deception so that they could "avoid any chill on a potential sale."[57] Accordingly, the Bankruptcy Court's findings of fact *necessarily* and *do* satisfy the elements of fraud.

It stands to reason that an "unjust advantage" may come about by any number of circumstances in which one party stands to gain at the expense of another. As one Louisiana court held: **"We deem it an unjust advantage to obtain a sale by misrepresentation."** *Aetna Ins. Co. v. General Electric Co.*, 362 So. 2d 186, 1187 (La. App. 4 Cir. 1978) (finding of fraud under Louisiana law affirmed). Thus, it was clearly erroneous for the Bankruptcy Court to conclude as a matter of law that the Hollanders were not fraudulent in light of its findings of fact that squarely satisfy the correct standard.

Louisiana law is replete with cases stating that "[f]raud exists if it can be shown that material misrepresentations have been made by one party **designed to deceive another,** . . . to cause loss or inconvenience to the other." *Lanthier v. Family Dollar Store*, 848 So. 2d 605, 609 (La. App. 3 Cir. 2003) (citing *Deville v. Leonards*, 457 So.2d 311, 313 (La. App. 3 Cir. 1984)) (emphasis added); *Gardner v. Nabors Offshore Corp.*, 800 So. 2d 412 (La. App. 3 Cir. 2001) (citing *Altex Ready-Mixed Concrete Corp. v. The Employers Commercial Union Insurance Company et. al.*, 308 So. 2d 889 (La. App. 1 Cir. 1975)); *Boise Cascade Corp. v. Dean*, 767 So. 2d 76, 83 (La. App. 3 Cir. 2000).

Fraud "consists in material misrepresentations committed by one party with the **design to deceive another** to obtain an unjust advantage or to cause loss or inconvenience to the other."

---

*Id.* (footnotes omitted).

[57]   *Id.*

17

*Murphy's Lease & Welding Service, Inc. v. Bayou Concessions Salvage, Inc.*, 780 So. 2d 1284,

1288 (La. App. 3 Cir. 2001) (emphasis added) (citing La. Civ. Code art. 1953; *Haywood v.*

*Louisiana Sugar Cane Prods.*, 692 So. 2d 524 (La. App. 3 Cir. 1997)); "Fraud exists if it can be

shown that material misrepresentations have been made by one party **designed to deceive**

another to obtain some unjust advantage or to cause loss or inconvenience to the other." *See B-C*

*& G Investors VI, L.L.C. v. Thibaut HG Corp.*, 985 So. 2d 837, 842 (La. App. 4 Cir. 2008)

(emphasis added); *McDonough Marine Service v. Doucet*, 694 So. 2d 305, 308 (La. App. 1 Cir.

1996) (citing La. Civ. Code art. 1953)).

　　　In a remarkably similar case, *Gad v. Granberry*, 958 So. 2d 125 (La. App. 3 Cir. 2007),

plaintiffs purchased a home for $550,000 and sued both the sellers and their realtors for

redhibition and fraud, claiming that the sellers and realtors were aware of defects related to

moisture intrusion and failed to notify the buyers. On an appeal for a related motion for summary

judgment on the issue of fraud, the appellate court held that if the realtor-defendant "knew of

problems with the residence and she did not tell [the buyers], **she created an unjust advantage**

**for herself . . . and caused a loss to [the buyers]."** *Gad v. Granberry*, 30 So. 3d 265, 269 (La.

App. 3 Cir. 2010).

　　　Here, the Bankruptcy Court found that there was a misrepresentation by the sellers that

was "**designed to deceive.**"[58] For what reason would the Hollanders engage in deceit other than

to obtain an unjust advantage over the Sigillitos? The problems and repair work were so severe

and extensive that failure to disclose them cannot possibly have been a mere oversight. The fact

that the Hollanders were actively involved in litigation regarding the floors alone would cause

any reasonable seller to think twice when encountering the key question on the disclosure form.

---

[58]　*See* Bankruptcy Court's Original Memorandum Opinion [R. Doc. No. 103, p. 20].

The Hollanders' nefarious concealment gave them the decidedly *unjust advantage* over potential buyers, such as the Sigillitos, because such a buyer would be scared and would not have purchased the home.[59] The Bankruptcy Court noted its belief that the Hollanders' misrepresentation was "designed to avoid any chill on a potential sale"; [60] that revealing the extent of the repair work would "scare off potential buyers"[61]; that [a] disclosure might have resulted in additional and particularized investigation and perhaps remedial repairs that would have avoided further damage"[62]; and that the misrepresentation was "designed to deceive."[63] ***This is a misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage. This is fraud under Louisiana law.***

The Bankruptcy Court could not have more clearly defined fraud had it copied the definition from the Louisiana Civil Code. As the Bankruptcy Court correctly stated, the Hollanders' failure to disclose defects in the home was "**misleading,**" "**designed to deceive,**" and "**designed to avoid any chill on a potential sale.**"[64] The Hollanders simply would not have been able to sell the home for the price the Sigillitos paid had they told the truth; they instead elected to take an unjust advantage over the Sigillitos for their self-serving benefit.

---

[59]   *Id.* at p. 21, n.65.

[60]   *Id.* at p. 20.

[61]   *Id.*

[62]   *Id.* at 20.

[63]   *Id.*

[64]   *Id.* at 19-20.

II.     **A Finding of Fraud Requires that this Court Award the Sigillitos**
        **All Damages and Attorneys' Fees Under Louisiana Civil Code article 1958.**

   A.     **Standard of Review.**

Whether damages and attorneys' fees are allowable under Louisiana Civil Code article 1958 is a question of law, and a question of law gives rise to the plenary standard of *de novo* review. *Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049, 1053 (5th Cir. 1984); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1307 (5th Cir. 1985).

   B.     **The Sigillitos are Entitled to Damages and**
          **Attorneys' Fees under Louisiana Civil Code article 1958.**

Under Louisiana Civil Code article 1958, "[t]he party against whom rescission is granted because of fraud is liable for damages and attorneys fees." La. Civ. Code art. 1958. While rescission may not have been granted, the standards for rescission have been met, and the remedy was available to the Bankruptcy Court.

Given the Hollanders' bankruptcy, rescission was impracticable.[65] However, the impracticability of rescission is insufficient cause to refuse to award damages and attorneys' fees. Rescission is often an insufficient remedy to a fraud claim, and where there are residual damages, damages and attorneys' fees may be recovered. *See* La. Civ. Code Ann. art. 1958 cmt. (b) (citing 1 DEMOGUE, TRAITÉ DES OBLIGATIONS EN GÉNÉRAL 582 (1923); 6 PLANIOL ET RIPERT, TRAITÉ PRATIQUE DE DROIT CIVIL FRANÇAIS 250 (2d ed. Esmein 1952); WEILL, DROIT CIVIL – LES OBLIGATIONS 200 (1970)).

The Sigillitos recognize that asking the Court to grant damages and attorneys' fees solely based upon fraud where rescission is impracticable is less common, especially because the award is usually granted under bad faith redhibition. Counsel has been unable to find any published

---

[65]     *See* Bankruptcy Court's Original Memorandum Opinion [R. Doc. No. 103, p. 15].

Louisiana cases in which fraud was established, damages and attorneys' fees were requested, yet rescission of the sale was "impracticable."

In the normal course of events, rescission is rarely impracticable. Normally, a cause of action for fraud is paired with redhibition. And even where a purchaser asks for rescission of the sale, damages, and attorneys' fees under fraud and bad faith redhibition, Louisiana courts will grant an appropriate remedy under either or both theories, including damages and attorneys' fees. *See, e.g.*, *Mayfield v. Reed*, 981 So. 2d 235 (La. App. 2 Cir. 2008) (request for rescission rejected but damages and attorneys' fees awarded).[66]

The Sigillitos have paid dearly for the Hollanders' fraud, but the only relief they have been able to get is a minimal damage award that reflected only some of the actual damages they incurred.[67] Since then, the Sigillitos have continued *to this day* to try to remedy the problem with which the Hollanders nefariously left them. The Sigillitos have yet to successfully remedy the problem. When the Sigillitos go to sell their house in the future (*if* they can ever sell their house), they will need to disclose the moisture defect in the home and explain why both they and the previous sellers spent thousands upon thousands of dollars in litigation.[68] The root of the

---

[66]  In *Mayfield v. Reed*, 981 So. 2d 235, 240 (La. App. 2 Cir. 2008), the District Court awarded the plaintiffs $89,400.00 in damages to fix the redhibitory defect based on estimates that ranged from $15,000.00 to $104,737.50. The appellate court increased the partial amount of attorneys' fees that the trial court had granted to the full amount of attorneys' fees ($42,489.00), plus an award for attorneys' fees associated with the appeal. *Id.* at 241.

[67]  *See* Bankruptcy Court's Amended Judgment [R. Doc. No. 114]. The expert report introduced at trial estimated the cost to refinish the floors and repair the walls alone, but nothing in the Bankruptcy Court's damage award even begins to address the root issue to the moisture problem. *See* Bankruptcy Court's Memorandum Original Memorandum Opinion [R. Doc. No. 103], at pp. 15-16. Of course, it would be useless to replace the floors or repair the walls and doors unless the source of the moisture problem is fixed or controlled. To date, the commercial dehumidification system installed under the house has not fully eliminated the moisture problem and cupping of the floors is again evident.

[68]  It is notable that the Sigillitos have expended significant attorneys' fees in the pursuit of a correct and just remedy of this case. Even before filing the very first appeal from the Bankruptcy Court's memorandum opinion, the Sigillitos had expended $122,929.97 in attorneys' fees alone (in addition to the significant costs they have incurred and will continue to incur to remedy the defects in the home).

21

problem was the Hollanders' lies and deceit. It is the Hollanders who should be responsible for their own actions—not the Sigillitos.

## CONCLUSION

This Court cannot allow the Bankruptcy Court to deny the Hollanders the relief they are entitled to again. The trial in this matter was more than five years ago. There, the Bankruptcy Court was in the best possible position to make the factual findings regarding the Hollanders' intent. Those findings fit squarely within the definition of fraud under Louisiana law. Everything about the Hollanders' concealment was "designed to deceive"—that is, to obtain an unjust advantage over the Sigillitos. In other words, the Hollanders engaged in fraud. As such, the Sigillitos respectfully request that this Court: (1) reverse the Bankruptcy Court's finding that the Hollanders were not fraudulent in the sale of their home to the Sigillitos; (2) render judgment in favor of the Sigillitos; and (3) grant the Sigillitos the damages that are owed to them under the Louisiana Civil Code for fraud under article 1958, including attorneys' fees upon submission and review by this Court.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

BY:     */s/ Benjamin W. Janke*
        EDWARD H. ARNOLD, III (18767)
        BENJAMIN W. JANKE (31796)
        201 St. Charles Avenue, Suite 3600
        New Orleans, Louisiana 70170
        Telephone: (504) 566-5200
        Facsimile: (504) 636-4000

**ATTORNEYS FOR
ROBERT AND RHONDA SIGILLITO**

22

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of December 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to:

> Claude C. Lightfoot, Jr., Esq.
> Roy S. Lilley, Esq.
> Richard Greenland, Esq.

and I hereby certify that I have sent by United States mail, postage prepaid, the document to the following non-ECF participants:

> U.S. Trustee
> 400 Poydras Street, Suite 2100
> New Orleans, LA 70130

This the 30th day of December, 2013.

*/s/ Benjamin W. Janke*
BENJAMIN W. JANKE

23